UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| THE PEOPLE OF THE STATE Of CALIFORNIA | ) ) ) | |
|---|---|---|
| Appellant, | ) ) | |
| Vs. | ) ) | Case No.: 25-2370 District Court Case No.: 4:25-cv-999 |
| 23andME HOLDING CO., et al. | ) ) | |
| Appellee | ) | |

## EMERGENCY MOTION TO STAY OF A CURRENT 23andME CUSTOMER AND AMICI CURIAE

COMES NOW Elizabeth Dreicer,[1] a current customer of 23aandMe, and Amici Curiae The University of California, Santa Cruz Center for Applied Values and Ethics in Advancing Technologies ("CAVEAT"), members of the Global BioData Trust Bioethics committee, Linda MacDonald Glenn, JD, LLM, Lisa A. Berkley, PhD, Alexander M. Capron, LLB, Camille Nebeker, EdD, MS, Nanette Elster, JD, MPH, Arthur L. Caplan, PhD, Paul Root Wolpe, PhD, Kayte Spector-Bagdady, JD, MBe, Robert Cook-Deacon, M.D., and Andrea Downing (hereinafter Appellants),[2] by and through counsel, and for their Motion to Stay pursuant to FRAP Rule 8, state as follows:

---

[1] Ms. Dreicer's affidavit demonstrating the actual harm is found in attachment A.
[2] See Exhibit B.

1. This is a significant matter of first impression in bankruptcy law as it applies to privacy interests and personally identifiable information because it centers upon a question of first interpretation of the requirements of 11 U.S.C. Section 363. Specifically, the bankruptcy court explicitly declined to give "due consideration" to the Consumer Privacy Ombudsman's report and recommendations as required by the bankruptcy code as amended. Congress added the privacy protection of the consumer because it recognized that bankruptcy sales of personally identifiable information require significant additional protection.[3]

---

[3] The fundamental policy issues attending Congress's modification of bankruptcy law to recognize the significant privacy implications in bankruptcy sales has so far not been recognized in bankruptcy adjudications:

> Companies acquire troves of data about their customers throughout the course of the companies' operations, which raises various privacy concerns. Data is a valuable asset to companies, especially when it is personal data that can be used to predict, shape, and monetize consumer behavior. This accumulation of data brings with it privacy issues regarding misuse of data, nonconsensual data sales, and unauthorized access. Historically, regulators have aimed to protect consumer privacy through tort law and various statutory regimes. More recently, comprehensive data privacy legislation has been enacted across the United States and globally, including the California Consumer Privacy Act of 2018 and the European Union's General Data Protection Regulation. With this development has come a renewed focus on data privacy in bankruptcy, where a debtor is likely to sell its customer data to pay its debts.
>
> In 2005, Congress created the ombudsman role to protect consumer data in bankruptcy data sales, but it has been ineffective at meeting that goal. There are various hurdles to ombudsman appointments, making it difficult for them

2

2. Section 363's "due consideration" requirement reflects Congress's explicit intention that a bankruptcy court faced with a potential sale involving consumers' personally identifiable information give effect to recommendations of the Consumer Privacy Ombudsman appointed to vindicate the privacy interests at stake in any such transaction. In this case, the privacy interests are immense because the personally identifiable information is the vast trove of at least 15 million customers' genetic material and related identifying information. Despite Section 363's "due consideration" mandate, the Bankruptcy Court explicitly declined to give effect to the Ombudsman's protective recommendation so that his recommendation would not in any way burden the bankruptcy sale. This decision, contrary to statute, is revealed in the following quote from the Bankruptcy Court Order:

---

to be brought into the process. And the tools ombudsmen do have to protect privacy, such as their reports, fail to produce tailored privacy recommendations. These shortcomings are due to the ombudsman's tension with bankruptcy policy and the bargaining process. The ombudsman reduces the pool of funds that could go to creditors, introduces inefficiencies in the negotiation process, and has insufficient leverage in the bargaining process. But reforms can help the ombudsman be more effective. To better achieve Congress's goal, the ombudsman role must be reformed to have more teeth, the U.S. Trustee and judges must be more proactive in seeking ombudsman appointments, and regulators must be more aggressive when enforcing privacy laws in bankruptcy.

Data Privacy in Bankruptcy: The Consumer Privacy Ombudsman, Vol 138, Issue 5, March 2025 (footnotes omitted).

> The Ombudsman has recommended that I require the Debtors to obtain opt-in consent to the proposed transaction even if I conclude that it is not required by the law. He describes this as "the optimal solution from a consumer privacy perspective" (Omb. Rep. 105).
>
> Alternatively, he suggests that I permit TTAM to obtain possession of customer data but not permit TTAM to use the data of a particular customer until it obtains affirmative opt- in consent from that customer. I agree that either of these requirements would provide robust protections for consumers. Nevertheless, assuming that I have the authority to impose conditions such as these, there are three reasons why it is not appropriate to do so in the particular circumstances of this transaction.
>
> First, the effect of the proposed transaction on consumer privacy is not so significant as to justify court intervention. …. Consumers are not likely to even understand why their consent has been requested in this scenario. I see no need to impose obstacles to the ongoing operations of this enterprise.
>
> Second, there is a significant risk that the sale will not close if I impose an opt-in requirement. ….

Memorandum Opinion, pp 35-36.

3. Appellants are Elizabeth Dreicer, a current customer of 23aandMe, and scholars concerning ethical issues in the treatment of genetic data and biomaterials, including certain current and former customers of 23AndMe Holding Co.

4. Appellants opposed the sale of substantially all of the assets of Debtors in the Chapter 11 bankruptcy proceeding in the Eastern District of Missouri, Case no. 25-bk-40976-357.

5. As noted above, on June 27, 2025, the Bankruptcy Court approved the sale, declining to implement any of the suggestions of the consumer privacy ombudsman report required under 11 USC §363(b)(1).

6. The Consumer Privacy Ombudsman's report is 211 pages long. The essence of the Ombudsman's recommendation is, however, unambiguous:

> *"CPO cannot conclude that **the sale or transfer of the Company's assets to either bidder does not violate applicable non-bankruptcy laws, unless the Company first obtains affirmative consent from the Company's customers (that complies with applicable state law requirements) prior to the winning bidder**"….*

The heart of the Ombudsman's recommendation to the Bankruptcy Court is, at minimum, for the bankruptcy sale to go forward it must be conditioned on each customer's receiving new notice of the sale and explicitly opting into the transfer of their personally identifiable information to the new owner, as well as information

about how the sale would affect each customer's privacy interests in deposited genetic and related information, and the procedures available to each customer for deleting all such information so that it cannot be used after the sale by the transferee in bankruptcy.

7. Appellants sought an emergency stay of the Bankruptcy Court's Order approving the sale in the Bankruptcy Court. Upon the Bankruptcy Court's denial of relief, Appellants appealed that ruling to the United States District Court for the Eastern District of Missouri and sought a stay pending the appeal of the Bankruptcy Court's Order approving the sale. (Doc. # 7, 4:25-CV-01001).

8. Appellants' appeal to the District Court was consolidated with the appeal filed by The People of the State of California, case no. 4:25-CV-00999.

9. The District Court granted a brief administrative stay to allow for briefing and argument of Appellants' Motions for Stay Pending Appeal of the Bankruptcy Court's Order approving the sale.

10. On July 10, 2025, after argument, the District Court denied Appellants' Motions for Stay Pending Appeal. (Doc. # 49). The District Court stated its reasons for the denial on the record. Those included that all Appellants lacked standing, that no Appellants would suffer irreparable harm and that the public interest favored an expeditious resolution of the bankruptcy case. In that same order, the District Court extended the Administrative Stay until 11:59 p.m. CDT on Friday, July 11, 2025.

11. Appellants now seek this Court's Order reversing the District Court's refusal to stay and an Order staying the Bankruptcy Court's Order approving the sale pending the resolution of this appeal.

12. If this Emergency Motion is not granted, the sale of 23andMe Holding Co. will proceed. This threatens the immediate loss of personally identifiable information in the form of genetic material and information of approximately 15 million customers or former customers of that company.

13. The appeal of this matter involves a matter of first impression, i.e., what constitutes the "due consideration" that a bankruptcy court must give to the required report of a consumer protection ombudsman under 11 USC §363(b)(1).

14. The Bankruptcy Court, while briefly discussing the consumer privacy ombudsman's report, dismissed its recommendations. Appellants urge that the refusal to meaningfully consider the consumer privacy ombudsman report and recommendations constitutes an abuse of discretion.

15. The emergency nature of this motion is that, if the existing administrative stay expires, the sale of the assets of 23andMe Holding Co. will proceed. That amounts to the sale of personally identifiable information, but not just account numbers, names or financial information. Instead, the sale would constitute the sale of individuals DNA material and genetic information to a new company under the control of the original founder of 23andMe Holding Co.

16. Appellants are likely to succeed in this appeal because of the Bankruptcy Court's abuse of discretion in disregarding the recommendations of the consumer privacy ombudsman. Appellants, who include present and former customers of 23andMe Holding Co., will suffer immediate and palpable harm in that their personal information will be transferred to a new organization without adequate safeguards for how that information will be kept or to what purpose it will be put.

WHEREFORE, Appellants request this Court to enter its order granting a stay of the Bankruptcy Court's June 27, 2025, Order pending the completion of this appeal.

Respectfully submitted,

**BUCKLEY ENGELBART & CHAPELL, LLC**

By: /s/ Adrian P. Sulser
Martin J. Buckley  #37000MO
Adrian P. Sulser    #33103MO
10805 Sunset Office Dr., Suite 401
St. Louis, MO  63127
Telephone:  (314) 621-3434
Facsimile:   (314) 621-3485
mbuckley@buckleylawllc.com
sulser@buckleylawllc.com
Attorneys for Amici Curiae

## CERTIFICATE OF SERVICE

  I, the undersigned, certify that a copy of the foregoing has been electronically served on all counsel of record via the Court's CM/ECF System on this 11th day of July 2025.

            /s/  Adrian P. Sulser

# CERTIFICATE OF COMPLIANCE AND SERVICE

The undersigned hereby certifies that:

1. This Emergency Motion to Stay complies with the type-volume limitations in Rules 32(a)(5) and 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure. This pleading contains 1886 words, as determined by Microsoft Office Word 2010 software and the type face (Times New Roman) is size 14.

2. This Emergency Motion to Stay has been scanned by the undersigned for viruses and no viruses were found.

3. A true and correct copy of this Emergency Motion to Stay was served upon all parties of record via the Eighth Circuit's filing system on July 11, 2025.

**BUCKLEY ENGELBART & CHAPELL, LLC**

By: /s/ Adrian P. Sulser
Martin J. Buckley  #37000MO
Adrian P. Sulser   #33103MO
10805 Sunset Office Dr., Suite 401
St. Louis, MO  63127
Telephone:  (314) 621-3434
Facsimile:   (314) 621-3485
mbuckley@buckleylawllc.com
sulser@buckleylawllc.com
Attorneys for Amici Curiae